## ARKANSAS FUEL OIL CO. et al. v. McDOWELL et al.

No. 18734.   Opinion Filed Nov. 20, 1928.

West, Gibson, Sherman, Davidson & Hull, for plaintiffs in error.

Anglin & Stevenson, Warren & Crutcher, and Forrest M. Darrough, for defendants in error.

BENNETT, C.   Joe C. McDowell brought suit in district court of Hughes county against W. J. Thurber, Arkansas Fuel Oil Company, and Arkansas Natural Gas Company to foreclose a lien for work and labor done and materials furnished upon a certain oil well and equipment.   Numerous other parties intervened asking that their claims and liens be adjudicated and declared against the same property.

Upon the trial of the case the court rendered judgment against said Thurber, as principal defendant, in favor of plaintiff and the several claimants for work and labor done and for materials furnished said Thurber in the drilling of said well.

It appeared in the case that the Arkansas Natural Gas Company and the Arkansas Fuel Oil Company were the owners of certain oil well casing which they had loaned to and which was used by said Thurber in the enterprise, and the judgment of the court declared said casing subject to a lien for the benefit of all the claims adjudicated,

and also ordered said casing to be sold to satisfy such lien.

No money judgment was rendered against either the Arkansas Natural Gas Company or Arkansas Fuel Oil Company, but these companies appealed to the Supreme Court from so much of the decree as adjudged their casing subject to the lien of said judgments, and upon such appeal gave bond with the Aetna Casualty & Surety Company as their surety.

Said bond was conditioned that:

"If the said obligors shall have forthcoming the property ordered to be sold herein so that the same may be proceeded against, or will pay the value of any property taken by them and not forthcoming to satisfy the judgment of the court, and will abide by and perform the judgment of the appellate court in case the judgment or final order shall be adjudged against them, in whole or in part, and will pay said obligees all costs and damages that may be adjudged against these plaintiffs in error, then said obligation shall be void."

It later having been made to appear to the court that said companies desired to remove and use their casing, the court, upon application of such parties, on October 11, 1924, caused the said property to be appraised. The appraisal was accordingly made, and the report thereof, duly verified, was filed showing the value of the casing to be $3,007.47. The appraisal was made before the owners aforesaid were permitted to remove the property.

The parties hereto are numerous, and for the purpose of clarity, and for the reason hereinafter appearing, the Arkansas Natural Gas Company and the Arkansas Fuel Oil Company will be designated as plaintiffs, and the other parties will be designated herein as defendants.

The case on appeal to this court was affirmed July 20, 1926, and, after the coming down of the mandate, the defendants, on January 29, 1927, filed a petition to set aside the order of the court of October 11, 1924, directing appraisement of the property on the ground that such appraisement was made without notice to them, and that the property was appraised at much less than its real value. Two of the defendants, Joe C. McDowell and L. C. Mitchell, also filed a separate and independent suit against the plaintiffs and their bondsmen on the bond aforesaid. On February 21, 1927, plaintiffs paid in to the court clerk of Hughes county, for the purpose of satisfying their obligations under said bond, the full appraised value of said casing with interest thereon to date of payment, and made application to be discharged from said bond.

By agreement of all parties, and under direction of the court, the motion to set aside the order of appraisement, the pending suit for judgment on the bond, and the application of plaintiffs to be discharged as aforesaid, were all consolidated for the purpose of having the entire matter heard and disposed of at one time and in the same proceeding, and later the entire matter came on for hearing on March 25, 1927, at which time all parties appeared in person or by counsel, and the matter was heard by the court without a jury, and the following proceedings were had: The court clerk informed the court that plaintiffs had paid in to him the full appraised value of said property together with interest thereon to date of payment. It was agreed between the parties that the several judgments rendered in the first-named suit aggregated $8,859.14, and that the total amount remaining in the hands of the court clerk, after deducting certain costs and expenses, was $5,950. Thereupon the court ordered the clerk to distribute the last-named sum to and among the defendants ratably, and in accordance with the prior judgments in the case, which left a deficiency amounting to $2,909.14, for which amount judgment was rendered against the plaintiffs and their bondsmen. It is from this judgment that plaintiffs appeal.

Was the judgment rendered supported by evidence or authorized by law? We are constrained to answer this question in the negative. First. It appears that plaintiffs had no interest in this controversy save to repossess themselves of their personal property which they had loaned to and which had been used by W. J. Thurber in the drilling of an oil well, and if possible to have it released from liens which had fastened upon same in behalf of the several defendants who had claims against Thurber. Second. In the original suit no personal judgment was taken in favor of either of claimants against either of these plaintiffs. Third. They were not necessary parties to said suit for any purpose as shown by the judgment, other than to have the judgments rendered in the first suit made liens upon the personal property of plaintiffs by reason of the fact that it was upon the premises and was used in connection with the lease upon which the well was drilled by Thurber. Fourth. They were not sued in the case at bar upon personal obligations other than the bond, which was in the nature of a forthcoming obligation for the return of personal property

claimed by plaintiffs or for its value. Fifth. No petition demanding a money judgment against plaintiffs was filed in the present proceeding except the one on the forthcoming bond.

So that, in no event and under no theory, can we seem to see any reason why a personal judgment was rendered against these plaintiffs, unless they were in default upon said bond. From an inspection of the record it appears that this bond was not given to supersede the money judgment, or any part of it, but only to assure the return of this personal property upon which the court had fastened a lien or to account for its value. And since all the parties were before the court, McDowell and Mitchell as parties plaintiff to the suit upon the bond in question, the other defendants upon their application to set aside the order of appraisement made by the court October 11, 1924, and the plaintiffs representing their motion to be discharged from liability on the bond and as defendants in the McDowell-Mitchell suit and in the nature of defendants in opposition to the application of the other defendants to vacate the order of appraisement, all of the various rights and demands could properly be finally disposed of. All of these proceedings having been consolidated and brought to the attention of the court and tried as one action, the parties in this court will be held to that theory. Milliken v. Smith, 120 Okla. 211, 251 Pac. 84. What, therefore, were the rights of the parties under the record as disclosed? First. All that the parties defendant had the right to demand of plaintiffs and their surety was the observance of the bond. Second. If the bond were observed and its terms carried out, the plaintiffs had the right to be released. Third. If the order of the court directing an appraisement made October 11, 1924, were a nullity and without authority of law, and if the defendants who applied for its abrogation were injured thereby, they had the right to have it set aside.

First, then, was the bond broken? It may be observed again that it was simply for the return of certain personal property or its value to the court in order that a lien fixed thereon might be foreclosed. At the hearing of this entire matter before the court, plaintiff introduced in evidence two expert witnesses—Mr. Drake, a district manager of Oil Well Supply Company, who had been in the supply business for 19 years, and Mr. Forester, oil field superintendent, experienced in such business for 24 years—and each of these witnesses testified at very

great length and in detail as to the value of this property, the return of which was secured by said bond, and they were cross-examined at very considerable length on all these matters. Each testified that the amount shown to be the value of this property by the appraisement, which they assisted in making under order of the court, was its true market value, and this is the only proof introduced or offered in this cause on this question. What was the duty of plaintiffs and of their bondsmen under this bond?

"Where the conditions of the bond are in the alternative, unless the election is given to the obligee, the performance of any one of the conditions releases the obligor, who may elect which alternative shall be complied with." 9 C. J. 68, and cases cited.

U. S. v. Thompson, 28 Fed. Cases No. 16486, where it is held:

"By the general rule of law, if the condition of an obligation be in the disjunctive, it may be discharged by the performance of either of the enumerated acts at the election of the obligor, for the condition is for his benefit."

Certainly it would not be contended that plaintiffs and their bondsmen were obliged to perform both conditions — return the identical property and to account in money for its equivalent.

Upon the coming down of the mandate they paid in to the court clerk the full market value of this property, and interest thereon, as shown by the appraisement, and also as shown by all of the proof in this case. What more could have been expected of them? The defendants' answer is, in effect, that the application for the order of appraisement was made to the court without notice to them, and perhaps on this account was not binding. Concede, without deciding, the point, but since the appraisement conforms exactly as to the value of the property to the entire proof in the case before the court in this proceeding, we see no reason why the regularity of that order comes in question. Whether there was or was not an appraisement is immaterial, since all the proof shows that the plaintiffs have accounted for the full cash market value of the property stipulated in the bond. Under such bond they could be called upon to do no more.

Defendants' other contention is that they were not allowed to put in their proof as to the value of the property. There is nothing in the record to warrant such a conclusion. No proof was offered by defendants. There was no proffer of what their witnesses would have testified to if

allowed to testify. Defendants were present in court for the purpose of determining the very issue as to the value of this property, and upon its value turned the question as to whether or not plaintiffs had met their obligations in the bond. Plaintiffs offered their proof, and we will presume, nothing else appearing, that the court was open to hear proof by defendants, if such they had. Having offered none, we assume that they had none. Cases may not be tried piecemeal. If the defendants had proof, they should have offered it. Upon the conclusion of the testimony, the court found as a fact that the property had been appraised at its true value, and further that the plaintiffs had paid in to the court such value with interest. The court further directed that the money so paid in should be distributed by the clerk to those entitled thereto under the former judgment ratably in the proportion to the amount of their several judgments. If, instead of paying into court its money value, they had delivered to the court clerk the identical property, no question could arise in this case. How can it be argued, therefore, that, because they paid in its value in money, they have not as fully met their obligation?

Under these facts the question of personal liability of plaintiffs is beyond any inquiry here. In the original case, while the creditors of Thurber made the plaintiffs parties, they did not plead against them any facts which would warrant a personal judgment, and the only judgment which affected them in the least was the lien fixed against their personal property. The rule is that judgments become binding upon all parties, not only as to all matters which were actually determined, but likewise as to all those matters which should have been determined. Corrugated Culvert Co. v. Simpson Township, 51 Okla. 178, 151 Pac. 854.

Aside from the fact that there was no pleading against them, there was no evidence of any liability, and there was no claim made by anyone that the defendants had a right to a money judgment against the plaintiffs except to the extent of having their property subjected to the lien of their claims. We have concluded, therefore, that upon all the proof in the case, the plaintiffs met fully the obligations of their bond by paying in to the court clerk upon the coming down of the mandate the full market value of the personal property in issue and the interest thereon; that the bond was thereby discharged; that the court was without authority to render judgment against the Arkansas Fuel Oil Company and the Arkansas Natural Gas Company, for that there was no pleading, and no proof of any such liability, and their personal liability otherwise was not at issue.

For the reasons given, it is held that the judgment of the trial court should be reversed, and the trial court is directed to set aside the judgments rendered against the plaintiffs and their bondsmen and discharge them from further liability on said bond.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.